UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LAWRENCE NECHELES, as guardian of JAMES DOE, a minor, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 19-cv-1381-JES-JEH |
| BOARD OF EDUCATION OF DWIGHT TOWNSHIP HIGH SCHOOL DISTRICT #230 and KATHRYN PATTEN, | ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER AND OPINION

This matter is now before the Court on a Motion to Dismiss (Doc. 6) and Memorandum in Support (Doc. 7) and Motion to Strike (Doc. 8) and Memorandum in Support (Doc. 9) by Defendant Board of Education of Dwight Township High School District #320 ("the Board"). Plaintiff has filed Responses (Docs. 18, 19). For the reasons set forth below, the Board's Motion to Dismiss (Doc. 6) is GRANTED in part and DENIED in part and the Board's Motion to Strike (Doc. 8) is GRANTED.

### BACKGROUND

The following facts are derived from Plaintiff's Complaint (Doc. 1), and the Court accepts all well-pleaded allegations as true for the purposes of a motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). Plaintiff Lawrence Necheles is the Public Guardian of Livingston County and the court-appointed guardian of James Doe, a minor.[1] Defendant Board is a body politic and corporate under the laws of the State of Illinois

---

[1] For simplicity, this Opinion uses the term "Plaintiff" to refer principally to James Doe.

and is responsible for the governance, organizational, and financial oversight of the staff and administration of Dwight Township High School District #230 ("DTHS"). Defendant Kathryn Patten is or was an employee of the Board during all times alleged in the Complaint.

Beginning in September 2018 and continuing through January 2019, Defendant Patten initiated a sexual relationship with James Doe, who was a student at DTHS as well as a minor without the legal ability to consent to sex. During these times, Plaintiff alleges Defendant Patten "openly" displayed romantic and physical cues making it "well-known" that she was sexually active and romantically involved with James Doe. Beginning in September 2018 and continuing through January 2019, Defendant Patten groomed and encouraged James Doe to engage in numerous sexual acts with her on the property of DTHS. Over this time period, Defendant Patten continuously made James Doe perform acts of sexual contact and penetration with her at DTHS and in her car often leaving together from school grounds in plain sight of school officials and employees, who Plaintiff alleges "failed to stop these repeated improper encounters." Doc 1, at 4. Plaintiff alleges the Board, through its officials and employees at DTHS, knew of Defendant Patten's improper sexual contact with James Doe and deliberately allowed for it to persist as a repeated pattern of misconduct until Defendant Patten was arrested and charged with criminal sexual assault of James Doe. This criminal matter is currently pending in Livingston County, Illinois.

Plaintiff further alleges Defendant Board knew of Patten's improper contact with James Doe where a teacher, who was present in Patten's classroom every morning before school, observed Patten openly engage in "improper relations" with James Doe. On prior occasions, Defendant Board knew of other improper sexual relationships between students and faculty, including repeated incidents involving a different member of DTHS faculty and/or athletic

department, taking place during and after school hours. Plaintiff alleges Defendant Board was deliberately indifferent to the repeated pattern of improper sexual contact between these students and faculty. On another occasion, a teacher employed by Defendant Board observed Defendant Patten drive James Doe to an alley where he exited "following a sexual rendezvous." *Id*

In Count 1 of his Complaint, Plaintiff alleges Defendants violated Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq*. Specifically, Plaintiff alleges Doe belongs to a protected group under Title IX; the Board provides educational institutions with programs and activities and are recipients of federal funds for educational programs and activities as defined under Title IX; Doe was subjected to discrimination and harassment by Patten where Patten forced Doe to engage in various sexual acts; the discrimination and harassment suffered by Doe was based on sex; and the Board permitted Doe to be discriminated against and harassed based on membership in a certain class of individuals. Doc. 1, at 5. Additionally, Defendant Board treated Doe differently than other similarly-situated individuals not belonging to the class of Doe, and the discrimination and harassment in the form of repeated acts of sexual penetration and sexual contact were so severe and pervasive that it altered the conditions of Doe's education. *Id*. Plaintiff alleges the Board had actual direct notice of Patten's misconduct after learning of her improper sexual contact with Doe (the Complaint is silent on who learned of the conduct and when) but was deliberately indifferent to her misconduct. Further, the Board, including school administrators, had knowledge of Patten's misconduct and possessed the authority to institute corrective measures but failed to take those measures to stop harm against Doe. Finally, Plaintiff alleges he suffered harm as a direct and proximate result of the conduct of the Board. *Id*. at 6.

In Count 2 of his Complaint, Plaintiff alleges the Board violated Plaintiff's due process right to bodily integrity in violation of 42 U.S.C. § 1983. *Id*. at 6. According to Plaintiff, the Board maintained a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law where: (1) the Board permitted their employees, such as Patten, to work with students without conducting background checks; (2) it permitted their adult employees, such as Defendant Patten, to engage in improper sexual conduct with students; and (3) the Board failed to train and require their employees to perform and/or evaluate background checks in order to disqualify Patten from employment with the Board. *Id*. at 7. Plaintiff alleges, due to the Board's deliberate indifference to the safety of the students and to the enforcement of performing background screening on their employees: (1) the Board retained Patten to work with students, including Doe; and (2) the Board created the plainly obviously consequence of sexual abuse by Patten upon Doe.. Plaintiff alleges, based on the Board's widespread practices and customs, the Board denied Doe due process right to bodily integrity under the law as protected by the Fourteenth Amendment to the U.S. Constitution and unlawfully denied Doe due process of law in a manner that shocks the conscience. *Id*. at 7.

In Count 3 of his Complaint, Plaintiff alleges the Board violated 42 U.S.C. § 1983 under the "state created danger" doctrine. *Id*. at 8. In addition to the allegations above, Plaintiff alleges the Board's deliberate indifference to its employees' improper sexual contact with students created a specific and identifiable threat to the students working with Patten and "effectively encouraged Defendant Patten to believe that he [*sic*] could engage in improper sexual contact with students without fear of reprisal." *Id*.

Count 4 of Plaintiff's Complaint is directed at Defendant Patten and is not at issue in the instant motions.

4

Count 5 of Plaintiff's Complaint asserts a common law negligence claim against the Board, alleging: (1) the Board knew or should have known that Patten was grooming Doe through her influence in order to commit sexual conduct upon him; (2) the Board owed a duty to Doe to report Patten's conduct to law enforcement or the Department of Children and Family Services ("DCFS"); (3) the Board had a duty to abide by the policies set forth in the Illinois School Code; (4) the Board' employees and/or agents had a duty to abide by the policy set forth in the Abused or Neglected Child Reporting Act; (5) the Board' employees and/or agents were mandated reporters as defined in the Abused or Neglected Child Reporting Act, which requires those with reasonable cause to believe a child known to them may be an abused to report such information to DCFS; (6) the Board lacked discretion with respect to its reporting requirements; and (7) the Board knew or should have known that their agents, servants, and/or employees and other school-based personnel needed training, direction, and supervision on these policies and procedures in order to prevent risk of harm to the students, but it was deliberately indifferent to provide adequate training on compliance with these policies and procedures. *Id*. at 11–12.

Plaintiff alleges the Board breached its duty to Doe and was negligent in the following respects: (a) the Board failed to report grooming and sexual contact between Patten with Doe to appropriate law enforcement or DCFS as required by state law or to appropriate school personnel as required by school policies and procedures; (b) the Board failed to supervise Patten in order prevent the improper grooming and sexual conduct with Doe; (c) the Board improperly hired or retained Patten where it knew or should have known of her sexual grooming of Doe; (d) the Board failed to reasonably direct, instruct, supervise, monitor, and train its agents, servants, and/or employees to ensure timely and proper reporting of grooming and sexual abuse, including grooming and abuse of Doe; and (e) the Board failed to adequately conduct background checks

5

on Defendant Patten. Plaintiff alleges he suffered harm as a direct and proximate result of one or more of the above alleged breaches. *Id*. at 13.

Lastly, Plaintiff realleges the above statements and asserts the Board's actions and omissions amount to willful and wanton conduct in the following ways: (a) the Board failed to report grooming and sexual contact between Patten with Doe to appropriate law enforcement or DCFS as required by state law or to appropriate school personnel as required by school policies and procedures with utter indifference to or in conscious disregard for the safety of others; (b) the Board failed to monitor Patten in order prevent the improper grooming and sexual conduct with Doe with utter indifference to or in conscious disregard for the safety of others; (c) the Board improperly retained Patten where it knew or should have known of her sexual grooming of Doe with utter indifference to or in conscious disregard for the safety of others; (d) the Board failed to reasonably direct, instruct, supervise, monitor, and train its agents, servants, and/or employees to ensure timely and proper reporting of sexual abuse, including abuse of Doe with utter indifference to or in conscious disregard for the safety of others; and (e) the Board failed to adequately conduct background checks on Patten with utter indifference to or in conscious disregard for the safety of others. *Id*. at 15–16.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the plaintiff. *See Bible*, 799 F.3d at 639. To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell*

*Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## DISCUSSION

**A. Defendant's Motion to Dismiss**

The Board argues in its Motion to Dismiss that Counts 1, 5, and 6 of Plaintiff's Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 6 (Motion), Doc. 7 (Memorandum). The Court will address each argument in turn, beginning with Defendant's argument with respect to Count 1.

**Count 1—Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.**

Defendants first argue Count 1 must be dismissed because Plaintiff fails to allege that an official with authority had actual notice of Defendant Patten's misconduct and was deliberately indifferent to it. Doc. 7, at 2–4. Specifically, Defendant argues Plaintiff's allegations—that an unidentified teacher not alleged to have administrative authority to institute corrective measures observed Defendant Patten drive James Doe to an alley and also allegedly observed Defendant Patten engage in unspecified "improper relations" with James Doe—are insufficient to plausibly allege the Board had actual knowledge of Patten's misconduct. In his Response, Plaintiff argues he "sufficiently alleged actual notice against the Board where he alleged, in relevant part, that 'Defendant Board had actual direct notice of Defendant Patten's [*sic*] after learning of her improper sexual contact with James Doe but Defendant were [*sic*] deliberately indifferent to her misconduct,' and 'Defendant Board, including school administrators, had knowledge of Defendant Patten's misconduct and possessed the authority to institute corrective measures;

7

however, Defendant failed to take corrective measures to stop harm against James Doe.' " Doc. 19, at 4.

"Title IX prohibits sex discrimination in educational programs that receive federal financial assistance." *Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 870 (7th Cir. 2012); 20 U.S.C. § 1681(a). However, "a school district sued in a private suit under Title IX cannot be held liable on the ground of *respondeat superior* for an employee's violation of the statute." *Id*. (citing *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 285 (1998)). Rather, a plaintiff must prove "an official of the school district who at a minimum has authority to institute corrective measures ... has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Id*. (citations omitted). In order to establish "actual notice," the "plaintiff must prove actual knowledge of misconduct, not just actual knowledge of the risk of misconduct." *Id*. (internal quotations and citations omitted). "School administrators have actual knowledge only of the incidents that they witness or that have been reported to them." *Doe v. Galster*, 768 F.3d 611, 618 (7th Cir. 2014).

Here, the allegations in Plaintiff's Complaint directed to the Board's alleged knowledge of Patten's misconduct fall well short of the pleading standards articulated by *Twombly* and *Iqbal*. For example, Plaintiff alleges Patten "openly" displayed romantic and physical cues making it "well-known" that she was sexually active and romantically involved with Doe. Doc. 1, at 3. This allegation is devoid of any factual support or information which would provide Defendant reasonable notice of the claims against it. Within this allegation alone, one is left to wonder what constitutes "romantic and physical cues," who specifically observed those cues, and who Patten made her conduct "well-known" to. Similarly, Plaintiff's allegation that Patten and Doe often left in Patten's car together from school grounds in plain sight of school officials and

8

employees who "failed to stop these repeated improper encounters" also fails to plausibly allege actual knowledge of Patten's misconduct by the Board. Doc 1, at 4. At best, these allegations establish some unidentified school employee suspected an improper relationship between Patten and Doe. This is insufficient to establish actual knowledge. *See Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 872 (7th Cir. 2012) ("What the principal and the superintendent knew was that Sweet's colleagues, in particular Gridley, suspected an improper relationship between Sweet and the plaintiff. But to know that someone suspects something is not to know the something and does not mean the something is obvious."). Plaintiff therefore fails to state a claim against the Board, and Count 1 is dismissed. Because Plaintiff has not yet amended his Complaint, this dismissal is without prejudice. The Court will allow Plaintiff 21 days to amend his Complaint to attempt to cure the deficiencies identified above if he has a good faith basis for doing so. Otherwise the dismissal will convert to one with prejudice as to this claim.

**Count 5—Negligence**

Recall that Count 5 alleges a common law negligence claim against the Board in the following respects: (a) the Board failed to report grooming and sexual contact between Patten with Doe to appropriate law enforcement or DCFS as required by state law or to appropriate school personnel as required by school policies and procedures; (b) the Board failed to supervise Patten in order prevent the improper grooming and sexual conduct with Doe; (c) the Board improperly hired or retained Patten where it knew or should have known of her sexual grooming of Doe; (d) the Board failed to reasonably direct, instruct, supervise, monitor, and train its agents, servants, and/or employees to ensure timely and proper reporting of grooming and sexual abuse, including grooming and abuse of Doe; and (e) the Board failed to adequately conduct background checks on Defendant Patten. Doc. 1, at 13.

The Board argues Count 5 should be dismissed because there is no tort liability for a violation of the Abused and Neglected Child Reporting Act. Doc. 7, at 4–6. Specifically, the Board argues the Abused and Neglected Child Reporting Act ("ANCRA") does not provide a private right of action based on its violation. Doc. 7, at 4 (citing *Doe ex rel. Doe v. White*, 627 F. Supp. 2d 905, 920 (C.D. Ill. 2009)). Because Count 5 provides for 5 separate theories of liability, the Court assumes this portion of Defendant's argument relates only to the first—the Board failed to report grooming and sexual contact between Patten with Doe to appropriate law enforcement or DCFS as required by state law or to appropriate school personnel as required by school policies and procedures.

The Court has previously addressed this issue in *Doe ex rel. Doe v. White*, 627 F. Supp. 2d 905, 920 (C.D. Ill. 2009). There, Judge Mihm reasoned,

> there is no underlying common law duty to report. ANCRA created that duty, and there is no tort liability for its violation. Both the Seventh Circuit and Illinois Courts have held that ANCRA does not provide, expressly or impliedly, for a private right of action based on its violation. *Varela v. St. Elizabeth's Hospital of Chicago,* 372 Ill.App.3d 714, 718–19, 310 Ill.Dec. 688, 692, 867 N.E.2d 1 (1st Dist.2007); *Doe v. North Central Behavioral Health Systems, Inc.,* 352 Ill.App.3d 284, 288, 287 Ill.Dec. 493, 816 N.E.2d 4 (3d Dist.2004)("There is no evidence that the statute [ANCRA] was designed to provide monetary remedies for victims of abuse or to impose civil liability on those who fail to report."); *Cuyler,* 362 F.3d at 954–55.
> ….
> To the extent *Dimovski* implies that a tort action exists for the violation of ANCRA reporting duties, the Court must disagree with that conclusion. In the Court's opinion, *Cuyler's* holding that ANCRA does not create a private cause of action for tort liability is dispositive of Counts XI and XIII; immunity is irrelevant.

*Doe ex rel. Doe v. White*, 627 F. Supp. 2d 905, 920 (C.D. Ill. 2009). Based on *White* and *Cuyler*, the Court does not believe a private right of action in tort exists under ANCRA, and thus Plaintiff's negligence claim for failure to report must be dismissed.

10

**Section 3-108 of the Illinois Tort Immunity Act**

Next, Defendant argues Plaintiff's remaining negligence claims in Count 5 must be dismissed because Section 3-108 of the Illinois Tort Immunity Act provides immunity from any liability arising out of any alleged negligent supervision or monitoring of employees. Doc. 7, at 7. Section 3-108, immunizes public entities against injuries proximately caused by the negligent "supervision" of any "activity" on public property. 745 ILCS 10/3-108(a)-(b). *Doe v. Bd. of Educ. of City of Chicago*, No. 19 C 00263, 2020 WL 1445638, at *14 (N.D. Ill. Mar. 24, 2020). In his Response, Plaintiff concedes that Section 3-108 applies to his negligence claim for failure to supervise, but argues it does not extend to Plaintiff's claims of negligent hiring, retention, background checks, or reporting. Doc. 19, at 8. Given this concession, the Court finds Plaintiff's second theory of liability in negligence—(b) the Board failed to supervise Patten in order prevent the improper grooming and sexual conduct with Doe— and fourth theory of liability—(d) the Board failed to reasonably direct, instruct, supervise, monitor, and train its agents, servants, and/or employees to ensure timely and proper reporting of grooming and sexual abuse—must be dismissed under Section 3-108. *See Doe v. Bd. of Educ. of City of Chicago*, No. 19 C 00263, 2020 WL 1445638, at *14 (N.D. Ill. Mar. 24, 2020) ("In light of the breadth of Section 3-108, the Board is immunized against the Plaintiffs' negligence claim for failure to supervise, monitor, direct, and instruct its employees."). This leaves Plaintiff's two remaining negligence claims— (c) the Board improperly hired or retained Patten where it knew or should have known of her sexual grooming of Doe; and (e) the Board failed to adequately conduct background checks on Defendant Patten.

With Plaintiff's negligence claims trimmed down to an improper hiring or retention claim and a failure to adequately conduct background checks claim, the Court proceeds to discuss

Defendant's argument that Sections 2-201 and 2-109 of the Tort Immunity Act immunize the Board from these remaining claims. Doc. 7, at 9. Section 2-201 provides: Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused. 745 ILCS 10/2-201. Further, Section 2-109 provides: A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable. 745 ILCS 10/2-109. "Read together, these sections provide 'both public employees and the public employer with immunity against allegations that challenge discretionary policy determinations.'" *Davis v. Board of Education of Waukegan Community Unit Sch. Dist. No. 60*, No. 19 C 4293, 2020 WL 1848205, at *5 (N.D. Ill. Apr. 13, 2020) (quoting *Murray v. Chi. Youth Ctr.*, 864 N.E.2d 176, 186 (Ill. 2007)).

Here, Defendant argues the decisions to hire, retain, or fire employees are discretionary actions requiring the Board to balance competing interests and make judgment calls as to what solution best serves the District. Doc. 7, at 11. In his Response, Plaintiff argues dismissal of the remaining negligence claims is premature because "the Board's conduct in this case, such as its … negligent hiring [and] retention" could be neither discretionary nor ministerial, but simply an oversight for which there would be no immunity." Doc. 19, at 10 (citing *Courson ex rel. Courson v. Danville Sch. Dist. No. 118*, 333 Ill. App. 3d 86, 88 (4th Dist. 2002)). It is difficult to say definitively at this stage of the case that the Board's hiring and retention of Patten or its background investigation (or lack thereof) were discretionary actions as opposed to an oversight. *See Courson*, 333 Ill. App. 3d at 88 (noting the possibility that "[t]he act or omission might be neither an exercise of discretion nor a ministerial act, but simply an oversight, in which event

there would not be immunity under section 2–201"). Accordingly, the Court denies Defendant's Motion to Dismiss as it relates to these two remaining negligence claims.

**Count 6—Willful and Wanton Conduct**

Defendant argues Plaintiff's willful and wanton conduct claim should be dismissed because (1) there is no tort liability for violating the Abused and Neglected Child Reporting Act, and (2) Sections 2-201 and 2-109 of the Tort Immunity Act provide immunity for willful and wanton conduct. For the reasons discussed above, Plaintiff's willful and wanton tort claim for failure to report is dismissed because there is no tort liability for a violation of the Abused and Neglected Child Reporting Act. And although Sections 2-201 and 2-109 immunize even willful or wanton conduct, the Court cannot determine at this stage of the proceedings that the Board's decision to retain Patten and its alleged failures to monitor, supervise, or perform background checks on her were discretionary actions as opposed to an oversight. *See Courson*, 333 Ill. App. 3d at 88. Accordingly, the Court declines to dismiss any willful and wanton claim except for the failure to report claim.

**B. Defendant's Motion to Strike**

Finally, Defendant moves to strike Plaintiff's claims of punitive damages against the Board because punitive damages are not available against local public entities such as the Board. Doc. 8; *see also* 745 ILCS 10/1-101, 10/1-206. In his Response, Plaintiff concedes punitive damages are not available. Doc. 18. Accordingly, Defendant's Motion to Strike is granted.

## CONCLUSION

For the reasons set forth above, the Board's Motion to Dismiss (Doc. 6) is GRANTED in part and DENIED in part and the Board's Motion to Strike (Doc. 8) is GRANTED. The Court will allow Plaintiff 21 days to amend his Complaint to attempt to cure the deficiencies identified above if he has a good faith basis for doing so. Otherwise the dismissed counts will convert to dismissals with prejudice as to those claims.

Signed on this 17th day of April, 2020.

                                               s/ James E. Shadid
                                               James E. Shadid
                                               United States District Judge